No. 11-30181

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

MATTHEW WAYNE HENRY,

Defendant/Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
THE HONORABLE H. RUSSELL HOLLAND

_____

BRIEF FOR THE UNITED STATES

_____

KAREN L. LOEFFLER
UNITED STATES ATTORNEY
DISTRICT OF ALASKA

JO ANN FARRINGTON
Assistant United States Attorney
Fed. Bldg. & U. S.Courthouse
222 W. 7th Avenue #9, Room 253
Anchorage, AK 99513-7567
Telephone: (907) 271-5071
Fax: (907) 271-1500

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CA No. 11-30181 |
| | ) | |
| Plaintiff/Appellee, | ) | DC No. 3:10-cr-00115H |
| | ) | District of Alaska |
| v. | ) | |
| | ) | |
| MATTHEW WAYNE HENRY, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |
| | ) | |

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
THE HONORABLE H. RUSSELL HOLLAND

BRIEF FOR THE UNITED STATES

KAREN L. LOEFFLER
United States Attorney

JO ANN FARRINGTON
Assistant United States Attorney
Federal Building & United States Courthouse
222 West 7th Avenue #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500

Counsel for Plaintiff/Appellee

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, ii

TABLE OF ABBREVIATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, v

STATEMENT OF ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . 1

    I.    Does the Second Amendment extend protection to the possession of a "homemade" fully-automatic machine gun?. 1

    II.   Does the decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), affect this Court's decision in *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), which held that Congress's ban on possession of even homemade machine guns is a valid exercise of the Commerce Power?. . . . . . . . 1

STATEMENT OF JURISDICTION AND BAIL STATUS. . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    There is no Second Amendment Protection for Possession of a Machine Gun.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

B.      Discussion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.     Because *Heller* extends no Second Amendment protection to machine guns, *Heller* provides no basis to revisit established precedent holding that § 922(o) is a valid exercise of Congress's Commerce Power as applied to homemade machine guns.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     A.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . 18

     B.      Discussion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          (1)     Binding Precedent Forecloses Henry's Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          (2)     Even if *Stewart* did not resolve the issue, Heller provides no support for an argument that a ban on homemade machine guns exceeds Congress's Commerce Power.. . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ii

## TABLE OF ABBREVIATIONS

CR. . . . . . . . . . . . . . . . . . . . . . . . . . Clerk's Record (Docket Number)

ER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Excerpt of Record

PSR . . . . . . . . . . . . . . . . . . . . . . . . . . . . Presentence Report

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). . . . . . . . . . . . . . 11

*United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008). . . . . . . . . . . . . 11

*United States v. Gilbert*, 2008 WL 2740453, at *2 (9th Cir. 2008). . . . . .
11, 12, 17

*United States v. Hamblen,* 591 F.3d 471 (6th Cir. 2009). . . . . . . . . 11, 12

*United States v. Miller*, 307 U.S. 174 (1939). . . . . . . . . . . . . . . In passim

*United States v. Rambo*, 74 F.3d 948 (9th Cir. 1996).. . . . . . . . . . . 18, 19

*United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006). . . . . . In passim

## STATE CASES

*District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . .  In Passim

*Gonzales v. Raich*, 545 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001). . . . . . . . . . . . . . . . 20

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 20

*Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . 22

## FEDERAL STATUTES

18 U.S.C. § 921(a)(23). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. §§ 922(o)(1) and 924(a)(2). . . . . . . . . . . . . . . . . . . . . . In passim

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 5845(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## OTHER

4 Blackstone 148-149 (1769). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATEMENT OF ISSUES PRESENTED

I.   Does the Second Amendment extend protection to the possession of a "homemade" fully-automatic machine gun?

II.  Does the decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), affect this Court's decision in *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), which held that Congress's ban on possession of even homemade machine guns is a valid exercise of the Commerce Power?

## STATEMENT OF JURISDICTION & BAIL STATUS

The defendant Matthew Henry was convicted following a jury trial of possessing a fully-automatic machine gun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). He appeals, arguing that § 922(o) is unconstitutional in that it interferes with his right to possess firearms as protected by the Second Amendment.

Henry was charged by a federal grand jury with a violation of federal criminal law, and thus the district court had jurisdiction pursuant to 18 U.S.C. § 3231. Indictment, ER 169. Judgment was entered on July 7, 2011, (ER 3), and Henry filed his timely notice of appeal of his conviction on July 14, 2011. ER 1. This Court has jurisdiction to consider his appeal of his conviction pursuant to 28 U.S.C. § 1291.

Henry is serving his sentence of imprisonment, and his estimated release date is September 2012.

2

<u>STATEMENT OF THE CASE</u>

Henry was indicted on two counts of violating 18 U.S.C.

§§ 922(o)(1) and 924(a)(2), illegal possession of machine guns, by a

federal grand jury in the District of Alaska on November 16, 2010.  ER

169.[1]  Count One alleged that Henry had possessed a fully-automatic

machine gun on October 30, 2009, and Count Two alleged that on

June 14, 2010, Henry had possessed an auto-sear, which is a gun part

used to convert a weapon into a fully-automatic machine gun.

Henry moved to dismiss the indictment, arguing that the machine

gun charged in Count One was homemade, and beyond the reach of

Congress's power to regulate commerce.  He contended that his Second

Amendment right to possess firearms required heightened scrutiny of

Congress's exercise of its commerce power with respect to firearms, and

that he has a Second Amendment right to possess a machine gun in his

home.  CR 23.  For purposes of the motion, the district court assumed

that the machine gun was in fact homemade, but concluded that the

---

[1]Section 922(o), with exceptions not pertinent here, provides that
"it shall be unlawful for any person to transfer or possess a machine
gun."  Section 924(a)(2) provides for a potential ten-year penalty for a
violation of § 922(o).

Second Amendment right to possess weapons does not extend to machine guns, and that Congress had properly exercised its commerce power in banning the weapons. Therefore, the district court denied Henry's motion. Order, ER 153.

Henry's jury trial began on April 11, 2011, and the jury found Henry guilty of Count One on April 13. He was acquitted of Count Two, possession of the auto-sear. After preparation of a Presentence Report, the district court sentenced Henry on July 7, 2011, to 24 months' imprisonment, a $7500 fine, and forfeiture of the weapon. ER 92.

## STATEMENT OF FACTS

On the night of October 30, 2009, the authorities received a 9-1-1 call reporting gunfire from a home in Chugiak, Alaska, a residential neighborhood within the city limits of Anchorage, Alaska. PSR ¶ 12. When Anchorage Police Department (APD) officers arrived, they discovered a large number of spent shell casings near the front door of the residence.  PSR ¶¶ 13-14.  Two men were inside the home, Matthew Henry and Lee Gould, as well as Henry's wife.  *Id.*  The officers could smell alcohol on Henry, and Gould reported that Henry was drunk, and had offered to show him "something cool."  PSR ¶¶ 13 & 15.  Gould stated that he had declined, saying he was going to bed, but then heard Henry firing multiple shots outside.  *Id.*  He said that Henry had "many firearms" in the house, and believed that the one Henry had been firing was under the bed in Henry's room.  *Id.*  Henry's wife stated that she had gotten home just before the police arrived, and had not heard anything.  PSR ¶ 16.  Neighbors were interviewed, and reported hearing multiple shots, including what sounded like "bursts" of gunfire. PSR ¶¶ 17-18.

5

APD officers obtained a search warrant for the residence for evidence of the firearms and ammunition that were used in the unlawful weapons discharge.[2]  PSR ¶ 19.  Under Henry's bed, officers found a loaded assault rifle and an empty magazine next to the gun matching the empty shell casings they had found outside, along with other firearms.  *Id.*

Henry was arraigned and released on bail.  PSR ¶ 20.  The next month, APD received an anonymous tip that Henry was bragging that he had modified the seized weapon to make it fully automatic, and that the city officials had not even realized it.  PSR ¶ 21. Upon receiving the tip, APD tested the gun, and it was found to be capable of firing fully automatic.  *Id.*

APD provided this information to the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  PSR ¶ 21.  ATF took possession of the weapon, and confirmed that it was a machine gun and that Henry had not registered the weapon as required by federal law. PSR ¶¶ 22-25.  The assault rifle had been converted into a machine gun

---

[2]It is a violation of the Anchorage Municipal Code to discharge a firearm within the city limits.

by grinding out the left inside wall of the receiver, allowing installation of a machine gun auto-sear, and the trigger housing had been modified to allow it to move into an automatic position.  PSR ¶ 25.

ATF re-interviewed Gould, who reported that Henry had 20 to 25 firearms in the house, and that he worked on the firearms in the garage.  Gould stated that Henry had a milling machine and a large collection of gun parts in the garage, and had told Gould that he had the parts to convert a semi-automatic to an automatic firearm.  He reported that Henry abused alcohol and drugs, and was always armed with an automatic pistol.  PSR ¶¶ 26-32.

ATF obtained a federal search warrant for the premises, and in a search conducted on June 14, 2010, discovered 20 guns, a large number of gun parts, tools for modifying firearms, and firearms conversion manuals and videos.  PSR ¶¶ 33-37.  Included in the seized items was a machine gun auto-sear, which is used to convert a gun to a machine gun.  PSR ¶¶ 40-41.  During an interview, Henry admitted that all the guns and gun parts were his.  PSR ¶ 34.

Henry was indicted for possession of the machine gun on the night of October 30, 2009, and for possession of the auto-sear on June

7

14, 2010.[3]  ER 169.  He moved for dismissal of the indictment based on

an argument that the machine gun was homemade and protected by

the Second Amendment, and that regulation of its possession by

Congress was therefore beyond the scope of the Commerce Power.

CR 23.  The district court denied Henry's motion, ER 153, and a jury

subsequently convicted Henry for possession of the machine gun.

CR 74.

    This appeal, in which Henry again raises his Second Amendment

and Commerce Power claims, ensued.

---

[3]An auto-sear, a part designed and intended solely for use in
converting a weapon into a machine gun, is included within the
definition of "machinegun" in 18 U.S.C. § 922(o), as provided in
18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b).  Henry was acquitted of
this Count of the indictment, and it is not involved in this appeal.

SUMMARY OF THE ARGUMENT

The Second Amendment to the United States Constitution, while it protects the right of individuals to possess firearms of the type "typically possessed by law-abiding citizens for lawful purposes," *District of Columbia v. Heller*, 554 U.S. 570 (2008), extends no protection to the possession of machine guns. Indeed, the *Heller* Court has described the suggestion that it might do so as "startling." *Id.* at 624.

As for Henry's Commerce Clause argument, this Court has expressly rejected the notion that the application of the prohibition on possession of machine guns in 18 U.S.C. § 922(o) to so-called "homemade" machine guns is beyond Congress's power under the Commerce Clause.[4] *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006). Henry argues that because *Stewart* predates *Heller*, and because *Stewart* observed in passing that the Second Amendment

---

[4]Both *Stewart* and this case involved weapons that are "homemade" only in the sense that the defendants converted semi-automatic weapons, purchased in interstate commerce, into machine guns by installing machine gun parts, also purchased in interstate commerce, with the necessary metalwork to permit the installation.

9

offered no alternative basis for requiring heightened scrutiny of Congress's exercise of the Commerce Clause power, this Court should reconsider *Stewart*. This argument also fails, not only because *Stewart* is binding precedent that cannot be set aside absent reconsideration by this Court en banc, but primarily because *Heller* extends no Second Amendment protection to possession of machine guns. Therefore, *Heller* offers no support for an argument that *Stewart* was incorrectly decided.

<u>ARGUMENT</u>

## I.   There is no Second Amendment Protection for Possession of a Machine Gun

### A.   Standard of Review

A claim that a federal statute restricting the right to possess firearms is unconstitutional because of the Second Amendment is reviewed de novo.  *United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (upholding restrictions on possession of firearms by habitual drug users).

### B.   Discussion

Henry argues that his possession of a machine gun in his home is protected by the Second Amendment, as interpreted in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  There is no such right, as *Heller* makes clear, and as three circuits, including this one, have easily concluded since *Heller.  See United States v. Gilbert*, 2008 WL 2740453, at *2 (9th Cir. 2008) (unpublished) ("Under *Heller*, individuals still do not have the right to possess machineguns or short-barreled rifles, as Gilbert did[.]"); *United States v. Hamblen,* 591 F.3d 471 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) ("[U]nder *Heller*,

11

[defendant's] possession of the [machinegun and unregistered sawed-off shotgun] is not protected by the Second Amendment."). In the words of the *Hamblen* Court:

> Hamblen's challenge to his conviction for unlawful possession of unregistered machine guns has been directly foreclosed by the Supreme Court, which specifically instructed in *Heller* that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 2815-16. Moreover, the *Heller* Court expressly rejected Hamblen's reading of *United States v. Miller*, 307 U.S. 174 (1939), when it opined that it would be a "startling" interpretation of precedent to suggest that restrictions on machine guns, set forth in the National Firearms Act, might be unconstitutional. *See Heller*, 128 S.Ct. at 2815. Thus, whatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machine guns for personal use.

*Hamblen*, 591 F.3d at 474.

Thus, Henry urges on this Court a fundamental misreading of *Heller*.[5] The firearm at issue in *Heller* was a handgun, not a machine gun. In explaining the scope of the Second Amendment, the Supreme

---

[5]Given this Court's holding in *Gilbert*, the government would ordinarily spare this Court further discussion of this issue; however, since *Gilbert* is nonprecedential – however correct it might be – the government requests the Court's indulgence as it lays out the argument in more detail.

Court discussed both the nature of possession that is permissible and the sorts of weapons protected by the Second Amendment. The Court concluded that the Second Amendment addresses only weapons "in common use," and, as an historical matter, the Amendment's scope was tied to the "lawful weapons" that militia members would bring from home "to militia duty." 554 U.S. at 627. The Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625.

Following *Heller*, the test is <u>not</u>, as the Court explained, whether the weapons are "most useful in military service," an interpretation that would provide a right to keep "M-16 rifles and the like" at home. *Heller*, 554 U.S. at 627. Rather, the test is whether the weapons are "typically possessed" in the home and "in common use" by "law-abiding citizens for lawful purposes." *Id.* at 624-625. Conversely, the Court found that the Second Amendment has never been construed to protect "the carrying of 'dangerous and unusual weapons.'" *Id.* at 627.

This issue was more specifically dicussed in the Supreme Court's analysis of its prior decision in *United States v. Miller*, 307 U.S. 174

13

(1939). In *Miller*, the defendants had been indicted under the National Firearms Act of 1934 for transporting in interstate commerce an unregistered sawed-off shotgun. In *Heller*, the Supreme Court re-affirmed that the *Miller* decision turned on the fact that the type of weapon at issue there – a sawed-off shotgun – was not eligible for Second Amendment protection. *Heller*, 554 U.S. at 622. The *Heller* Court said, "*Miller* stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* The *Heller* Court then considered what types of weapons are protected under the Second Amendment, writing:

> We may as well consider at this point (for we will have to consider eventually) *what* types of weapons *Miller* permits. Read in isolation, *Miller*'s phrase "part of ordinary military equipment" could mean that only those weapons useful in warfare are protected. *That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in Miller) might be unconstitutional, machineguns being useful in warfare in 1939.* We think that *Miller*'s "ordinary military equipment" language must be read in tandem with what comes after: "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." The traditional militia was formed from a pool of men bringing arms "in common use at the time" for lawful purposes like self-defense. "In the colonial and revolutionary war era, [small-arms] weapons used by

14

> militiamen and weapons used in defense of person and home
> were one and the same." Indeed, that is precisely the way in
> which the Second Amendment's operative clause furthers
> the purpose announced in its preface. *We therefore read
> <u>Miller</u> to say only that the Second Amendment does not
> protect those weapons not typically possessed by law-abiding
> citizens for lawful purposes, such as short-barreled shotguns.*
> That accords with the historical understanding of the scope
> of the right[.]

*Heller*, 554 U.S. at 624-625 (emphasis added) (internal citations omitted). *See id.* at 627 (explaining why "weapons that are most useful in military service -- M-16 rifles and the like -- may be banned," consistent with the right protected by the Second Amendment).

The *Heller* Court's references to the fact that weapons like short-barreled shotguns and machine guns do not fall within the scope of the Second Amendment right make clear that the indictment in this case does not infringe on any constitutional right of the defendant. The charges are based on his possession of a machine gun. Such a weapon is not akin to a handgun, the type of weapon that individuals have a right to maintain in their homes for self-defense under *Heller*. Indeed, *Heller* and *Miller* together make clear that a machine gun is not covered by the Second Amendment. The obvious potential for substantial public safety risks presented by possession of a machine

15

gun – particularly in a residential area – plainly supports that conclusion.

Typical handguns meet the test of "common use" and regular possession for lawful personal protection in the home, and it is this feature that brings handguns, as a class of arms, within the scope of the Second Amendment.[6] The firearm here, however, does not meet the threshold for a type of firearm that is within the protection of the Second Amendment. It is neither a weapon in "common use" nor a weapon that people would typically possess in the home for lawful purposes like self-defense. Rather, the weapon at issue here is the sort of "dangerous and unusual" weapon that has historically stood outside of the right to bear arms. *See Heller*, 554 U.S. at 627 (citing 4 Blackstone 148-149 (1769)).

After *Heller*, this Court treated the validity of restricting machine gun and short-barrel rifle possession as sufficiently obvious that it did

---

[6] That a class of firearms is eligible for Second Amendment protections does not mean that *any* possession of such a firearm is constitutionally protected. For example, as noted in *Heller*, the prohibition against felons possessing firearms is presumptively constitutional, and that remains true even if the firearm possessed is a handgun in the home. *Heller*, 554 U.S. at 627.

16

not even merit a published opinion to conclude that there was no error in a jury instruction that stated:

> A person does not have the right under the Second Amendment, or under any other provision of the Constitution, to possess a machinegun. A person does not have a right, under the Second Amendment, or under any other provision of the Constitution, to possess a rifle with a barrel shorter than 16 inches that the person has not registered in the National Firearms Registration and Transfer Record.

*Gilbert*, 2008 WL 2740453, at *1. The Court observed: "Under *Heller*, individuals still do not have the right to possess machineguns or short-barreled rifles, as Gilbert did, and convicted felons, such as Gilbert, do not have the right to possess any firearms." *Id.* at *2. That conclusion follows directly from *Heller*'s discussion of the sorts of weapons that are and are not protected by the Second Amendment.

Thus, the district court correctly concluded that the Second Amendment extends no protection to the possession of machine guns, and this Court should affirm the district court's denial of Henry's motion to dismiss on this ground.

17

**II. Because *Heller* extends no Second Amendment protection to machine guns, *Heller* provides no basis to revisit established precedent holding that § 922(o) is a valid exercise of Congress's Commerce Power as applied to homemade machine guns.**

### A. Standard of Review

The question whether the regulation of possession of weapons by Congress exceeds its power under the Commerce Clause is reviewed de novo. *United States v. Rambo*, 74 F.3d 948 (9th Cir. 1996).

### B. Discussion

#### (1) Binding Precedent Forecloses Henry's Argument

As Henry recognizes, in *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), this Court held that it was within Congress's Commerce Power to restrict the possession of even "homemade" machine guns. The Court concluded that the ban on machine guns was part of a comprehensive legislative regime regulating interstate commerce in firearms, and the possession of homemade machine guns in the aggregate could substantially affect the national market for commercial machine guns, which was established and lucrative. Applying the test laid out by the Supreme Court in *Gonzales v. Raich*, 545 U.S. 1 (2005) (upholding the ban on medical use of marijuana), this Court concluded

18

that Congress had a rational basis for concluding that possession of even homemade machine guns might bleed into the interstate market and affect supply and demand, especially in an area where Congress regulates comprehensively. *Id.* at 1076-1077. *See also, United States v. Rambo*, 74 F.3d 948 (9th Cir. 1996) (§ 922(o) valid regulation of channels of interstate commerce with respect to manufactured machine gun).

*Stewart* is established precedent, and absent reconsideration en banc, is binding on any panel of this Court. However, Henry argues that the decision was issued before *Heller* was decided, and that this Court is therefore "required" to reconsider *Stewart*. Opening Brief at 12-13. He notes a comment in a footnote by the Court in *Stewart*, observing that "We note in passing that since the Second Amendment does not grant individual rights, we cannot rely on it as a basis for requiring Congress to make specific findings in legislation touching on firearms." *Stewart*, 451 F.3d 1075, n.6 (internal citations omitted).

A three-judge panel of this Court lacks the power to do as Henry suggests. Henry does not argue that *Heller* expressly overrules – or even addresses – the Commerce Clause question addressed in *Stewart*

19

and *Rambo*. Nor does he identify anything in the *Heller* decision that so undercuts the theory or reasoning underlying *Stewart* that the cases are clearly irreconcilable. *See, e.g., Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Rather, based on a comment in a footnote, he relies on a theory that *Heller* – which does not even deal with the Commerce Clause – might provide the underpinnings for an argument that might have persuaded this Court to rule differently. This is not sufficient; as this Court has observed:

> [B]inding authority is very powerful medicine. A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. . . . The same is true as to circuit authority. . . . Circuit law . . . binds all courts within a particular circuit. . . . Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc or by the Supreme Court.

*Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). In the absence of Supreme Court authority that squarely conflicts with *Stewart* and *Rambo*, this Court's previous ruling on this point is final and cannot be set aside except by the Court sitting en banc.

**(2)** **Even if *Stewart* did not resolve the issue, *Heller* provides no support for an argument that a ban on homemade machine guns exceeds Congress's Commerce Power**

Even were *Stewart* not the law of this Circuit, *Heller* provides no support for an argument that a ban on homemade machine guns exceeds Congress's Commerce Power for two independent reasons. First of all, Henry's argument is entirely dependent on a conclusion that *Heller* holds that possession of machine guns is protected under the Second Amendment, and, as the discussion in Section I above explains, *Heller* establishes the opposite. Indeed, *Heller* expressly states that such an argument would be "startling." If there is no Second Amendment protection for machine guns, then there is no basis for an argument that *Heller* somehow influences the Commerce Clause analysis.

More fundamentally, however, the argument improperly conflates Second Amendment limitations on congressional authority with Congress's Commerce Power. Congress may lack the authority to take a particular action because it would violate the Second Amendment, or it may lack the authority because there is no rational basis for

21

concluding that there is an effect on interstate commerce, but the two limitations on its authority are analytically distinct. Thus, even if there were Second Amendment protection for machine guns (which there is not), that protection would not change the Commerce Clause analysis.

For the same two reasons, Henry's final argument is without merit. Henry argues that the district court should have applied a "heightened scrutiny test" in assessing Henry's motion to dismiss, because "regulations which substantially burden the right to keep and bear arms" require closer scrutiny, citing *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011). Unfortunately for Henry, his argument lacks an essential predicate; again, as explained above, there is no Second Amendment protection for possession of machine guns. Therefore, Congress's regulation of that possession does not, by definition, burden any right to "keep and bear arms."

Furthermore, "heightened scrutiny" is applied to the regulation of a constitutionally-protected activity in the process of analyzing whether Congress has sufficiently justified the decision to regulate the conduct at all and whether the restriction is carefully tailored so as not to tread

22

on the protected right any more than necessary; the concept has no application to the entirely separate question of whether the activity has a sufficient impact on interstate commerce to support regulation under the Commerce Clause.

<u>CONCLUSION</u>

There is no Second Amendment right to possess machine guns, and this Court has held that it is within Congress's Commerce Power to restrict the possession of homemade machine guns. Therefore, the district court properly denied Henry's motion to dismiss, and this Court should affirm Henry's conviction.

RESPECTFULLY SUBMITTED on December 28, 2011, at Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/Jo Ann Farrington
JO ANN FARRINGTON
Assistant United States Attorney

24