**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

       v.

MATTHEW WAYNE HENRY,
        *Defendant-Appellant.*

No. 11-30181

D.C. No.
3:10-cr-00115-
HRH-1

OPINION

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, Senior District Judge, Presiding

Argued and Submitted
June 26, 2012—Anchorage, Alaska

Filed August 9, 2012

Before: Alfred T. Goodwin, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

9035

## COUNSEL

Fred Richard Curtner, III (argued), Anchorage, Alaska, for the defendant-appellant.

Jo Ann Farrington (argued), Assistant United States Attorney, Karen L. Loeffler, United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellant Matthew Wayne Henry appeals his conviction for illegal possession of a homemade machine gun, under 18 U.S.C. § 922(o). He contends that he has a Second Amendment right to possess a homemade machine gun in his home. We reject this argument because machine guns are "dangerous and unusual weapons" that are unprotected by the Second Amendment. *Dist. of Columbia v. Heller*, 554 U.S. 570, 627 (2008). Henry also argues that Congress did not have the power to enact § 922(o)'s prohibition against possessing machine guns pursuant to the powers delegated to Congress in the Commerce Clause. That argument fails because we already have held that the Commerce Clause authorizes § 922(o)'s machine gun possession ban. *United*

*States v. Stewart*, 451 F.3d 1071, 1078 (9th Cir. 2006). Accordingly, we affirm Henry's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2009, the Anchorage Police Department dispatched officers to a home after receiving reports of gunfire. Officers found numerous shell casings in the area. The Anchorage police executed a search warrant of the residence, seeking evidence of firearms and ammunition. Officers seized a loaded .308-caliber assault rifle and an empty magazine found under Henry's bed. On October 31, 2009, Henry was arraigned in state court for discharging firearms while intoxicated. On December 7, 2009, the case was dismissed because the state declined to prosecute.

After Henry's release, the Anchorage police received an anonymous tip that Henry had converted the .308-caliber rifle into a machine gun prior to its seizure. The Bureau of Alcohol, Tobacco, and Firearms (ATF) examined the rifle and determined that it had indeed been converted into a machine gun. The ATF obtained a federal search warrant, and, on June 14, 2010, discovered at Henry's residence twenty guns, gun parts, firearms conversion instructions, and a machine gun auto-sear, which converts rifles to automatic weapons.

On November 17, 2010, the grand jury indicted Henry on two counts: (1) knowingly and unlawfully possessing a machine gun, in violation of 18 U.S.C. §§ 922(o)(1)[1] and

---

[1]18 U.S.C. § 922(o) states:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

924(a)(2), and (2) knowingly and unlawfully possessing an auto-sear, a part used to convert a weapon into a machine gun, in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). Henry moved to dismiss the two counts, arguing that, as applied to him, § 922(o) violates his Second Amendment right to keep and bear arms, and is not authorized under the Commerce Clause. The district court denied Henry's motion to dismiss, concluding that there is no Second Amendment right to possess a homemade machine gun in one's home, and that Congress had the power to enact § 922(o) using the powers delegated to it under the Commerce Clause.

After the district court denied Henry's motion, the case proceeded to trial. Henry testified that a firearm the government offered into evidence belonged to him. Henry further testified that he acquired all of the necessary parts to build a rifle from a variety of sources, and eventually built such a firearm. Although he denied at trial that he was trying to make a machine gun, he concedes on appeal that the rifle as converted by him was a homemade machine gun.

The jury found Henry guilty on count 1, and not guilty on count 2. The district court sentenced Henry to twenty-four months' imprisonment, and ordered his machine gun to be forfeited pursuant to 18 U.S.C. § 924(d)(1). Henry timely appealed his conviction.

## STANDARD OF REVIEW AND JURISDICTION

We review a statute's constitutionality de novo. *United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010). We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I.  Second Amendment

Henry claims that the Second Amendment protects his right to possess a homemade machine gun in his home.

**[1]** The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Supreme Court struck down the District of Columbia's ban on handgun possession, concluding that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592, 635.[2] However, the Court stated that the Second Amendment only protects the right to own certain weapons, and that it "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. The Court also concluded that the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' " limits the right to keep and carry arms. *Id.* at 627.

**[2]** *Heller* did not specify the types of weapons that qualify as "dangerous and unusual," but the Court stated that it would be "startling" for the Second Amendment to protect machine guns. *Id.* at 624. Since *Heller* was decided, every circuit court to address the issue has held that there is no Second Amendment right to possess a machine gun.[3]

**[3]** We agree with the reasoning of our sister circuits that machine guns are "dangerous and unusual weapons" that are not protected by the Second Amendment. An object is "dangerous" when it is "likely to cause serious bodily harm." *Black's Law Dictionary* 451 (9th ed. 2009). Congress defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more

---

[2]Subsequently, the Supreme Court held in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), that the Second Amendment applies to the states. *Id.* at 3026.

[3]*See United States v. Allen*, 630 F.3d 762, 766 (8th Cir. 2011); *United States v. Marzzarella*, 614 F.3d 85, 94-95 (3d Cir. 2010). *cert. denied*, 131 S. Ct. 958 (2011); *Hamblen v. United States*, 591 F.3d 471, 472, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008), *cert. denied*, 555 U.S. 1174 (2009).

than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The machine gun was first widely used during World War I, where it "demonstrated its murderously effective firepower over and over again." William Rosenau, Book Note, *The Origins of the First Modern Weapon*, TECH. REV., Jan. 1987, at 74, (reviewing John Ellis, *The Social History of the Machine Gun* (1986). A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. *See George C. Wilson, Visible Violence*, 12 NAT'L J. 886, 887 (2003). Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.

A machine gun is "unusual" because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986. Outside of a few government-related uses, machine guns largely exist on the black market.

**[4]** In short, machine guns are highly "dangerous and unusual weapons" that are not "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625, 627. Thus, we hold that the Second Amendment does not apply to machine guns. Moreover, because we conclude that machine gun possession is not entitled to Second Amendment protection, it is unnecessary to consider Henry's argument that the district court applied the incorrect level of constitutional scrutiny in evaluating his claims.

## II.   Commerce Clause

Henry next asserts that the Commerce Clause does not give Congress the power to prohibit possession of homemade machine guns. We disagree.

**[5]** The Commerce Clause allows Congress to "regulate Commerce . . . among the several States[.]" U.S. Const. art.

I, § 8, cl. 3. The Supreme Court has interpreted this to mean that Congress may regulate: 1) "the channels of interstate commerce[,]" 2) "the instrumentalities of interstate commerce, and persons or things in interstate commerce[,]" and 3) "activities that substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005). Supreme Court precedent "firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17. In *Raich*, for example, the Supreme Court concluded that the Commerce Clause allows Congress to regulate locally cultivated medical marijuana because "Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control would [ ] affect price and market conditions." *Id.* at 19.

**[6]** In *Stewart,* we rejected the defendant's claim that § 922(o)'s ban on machine gun possession was not within Congress's Commerce Clause authority, even though the statute applies to homemade machine guns that do not travel in interstate commerce. 451 F.3d at 1078. Applying *Raich*, we concluded that "Congress had a rational basis for concluding that in the aggregate, possession of homemade machineguns could substantially affect interstate commerce in machineguns" because "[h]omemade guns, even those with a unique design, can enter the interstate market and affect supply and demand." *Id.* Every other circuit that has reached the issue has similarly held that § 922(o) is constitutional under the Commerce Clause.[4]

---

[4]*See, e.g., United States v. Haney*, 264 F.3d 1161, 1170-71 (10th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002); *United States v. Franklyn*, 157 F.3d 90, 93, 96-97 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Wright*, 117 F.3d 1265, 1267, 1270-71 (11th Cir. 1997), *vacated in part on rehearing on other grounds by United States v. Wright*, 133 F.3d 1412 (11th Cir. 1998); *United States v. Knutson*, 113 F.3d 27, 31 (5th Cir. 1997) (per curiam); *United States v. Rybar*, 103 F.3d 273, 284-85 (3d Cir. 1996), *cert. denied*, 522 U.S. 807 (1997); *United States v. Kenney*, 91 F.3d 884, 889 (7th Cir. 1996); *United States v. Beuckelaere*, 91 F.3d 781, 784-85 (6th Cir. 1996); *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992), *cert. denied*, 507 U.S. 997 (1993).

Henry points to no relevant change in the caselaw of our circuit or the Supreme Court that overrules Stewart's conclusion that § 922(o) is a valid exercise of Congress' Commerce Clause powers.[5] We reject Henry's argument that *Heller* overrules *Stewart*'s Commerce Clause precedent because of what we said in footnote 6 of that opinion. In *Stewart*, we noted "in passing that since the Second Amendment does not grant individual rights, we cannot rely on it as a basis for requiring Congress to make specific findings in legislation touching on firearms." *Stewart*, 451 F.3d at 1075 n.6 (citation omitted). In *Heller*, in contrast, the Supreme Court concluded that "the Second Amendment conferred an individual right to keep and bear arms." 554 U.S. at 595. Our circuit precedent remains binding until the Supreme Court "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Thus, while *Heller* clearly overrules *Stewart*'s statement in footnote 6 that the Second Amendment does not confer individual rights, it has absolutely no impact on *Stewart*'s Commerce Clause

---

[5]Two days after oral argument in this appeal, the Supreme Court decided *National Federation of Independent Business v. Sebelius*, ___ U.S. ___, 2012 U.S. LEXIS 4876 (June 28, 2012), which held that the federal statute requiring individuals to purchase health insurance is a valid exercise of Congress's tax power. Five justices also agreed that the Commerce Clause did not authorize this statute. There has been considerable debate about whether the statements about the Commerce Clause are dicta or binding precedent. *See, e.g.,* David Post, *Commerce Clause "Holding v. Dictum Mess" Not So Simple*, THE VOLOKH CONSPIRACY, (July 3, 2012, 8:17 AM), http://www.volokh.com/2012/07/03/commerce-clause-holding-v-dictum-mess-not-so-simple/. We need not resolve that issue here because *National Federation of Independent Business* involved a requirement that individuals take action. *See Nat'l Fed'n of Indep. Bus.*, 2012 U.S. LEXIS 4876, at *45 (Roberts, C.J.) ("Construing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority.") (emphasis in original). In contrast, Section 922(o) involves a *prohibition* of conduct. Therefore, even if *National Federation of Independent Business* changed Supreme Court precedent regarding the Commerce Clause, we conclude it would not overrule *Stewart*.

holding. Indeed, *Heller* does not even mention the Commerce Clause. Accordingly, *Stewart's* Commerce Clause holding remains binding precedent in our circuit.

**[7]** In light of the above, *Stewart* requires us to reject Henry's claim that Congress did not have the authority to enact § 922(o)'s ban on machine guns pursuant to the Commerce Clause.

## CONCLUSION

For the foregoing reasons, Henry's conviction is affirmed.

**AFFIRMED**.